OPINION
BAILEY, Judge.
Case Summary
In this consolidated appeal, Blake Layman and Levi Sparks appeal their convictions for felony murder[1] as well as the sentences imposed thereon. We affirm in part and remand with instructions.
Issues
Layman and Sparks raise the following issues:
I. Whether their convictions and sentences violate the United States and Indiana Constitutions;
II. Whether Indiana Code section 35-42-1-1, the felony murder statute, was properly applied in this case; and
III. Whether their sentences are inappropriate.
Sparks also argues that there is insufficient evidence to support his felony murder conviction.
*960 Facts and Procedural History
On October 3, 2012, sixteen-year-old Layman, seventeen-year-old Sparks, and sixteen-year-old Jose Quiroz decided to commit burglary. They searched Quiroz’s neighborhood for a home where the residents were away because they were aware that the presence of a homeowner during a burglary can result in more serious legal charges and injuries. Sparks knocked on the door of the first house the young men targeted. When they heard dogs barking, the young men left. Someone was home at the second house they targeted.
Rodney Scott lived in the third house they targeted. He was upstairs taking a nap early that afternoon and did not hear the young men knock at his front door. Believing that no one was home at Scott’s house, Layman, Sparks, and Quiroz decided to break in. They contacted their friends, eighteen-year-old Anthony Sharp and twenty-one-year-old Danzele Johnson to help them.
Later that afternoon, Layman, Quiroz, Johnson, and Sharp walked around to the back of Scott’s house while Sparks remained outside with a cell phone so that he could contact them if the police or another visitor arrived at Scott’s house. The four men kicked in the steel back door and entered the house. Sharp grabbed a knife from the knife block in Scott’s kitchen, and one of the young men took Scott’s watch and wallet from the kitchen counter.
Scott was waking up from his nap when he heard a “boom ... and [his] whole house just shook.” Tr. p. 1058. After hearing a second loud boom and feeling a second vibration, he remembered that there had been a burglary in the neighborhood earlier that week. Scott grabbed his handgun and ran loudly down.the stairs to scare away any intruders. When he reached the bottom of the stairs, he saw Sharp run out the back door. Scott then turned and saw two of the young men standing at a downstairs bedroom door. Scott was standing between them and the kitchen door so they were unable to flee. Scott, who was afraid of being injured or killed, and who was concerned that Sharp would return, decided to frighten the young men into remaining in the bedroom by firing his handgun at the floor. When the young men ran into the bedroom closet, Scott used his cell phone to call 911.
While Scott was on the phone with the dispatcher, the closet door opened. Scott shouted at the men to keep the door closed. When the door opened again, Scott saw Johnson fall to the floor. Qui-roz, whom Scott now recognized as a neighbor, told Scott that Johnson had been shot. Thereafter, Layman yelled out that he had also been shot. He asked Scott if he could come out and lay on the bed. Scott told Layman to get back in the closet. When the police arrived, Quiroz flew out of the closet, pushed over a piece of furniture, and crashed through the bedroom window. While one of the officers pursued Quiroz, other officers entered the house and arrested Layman, who was treated for his leg wound. Johnson died at the scene from a gunshot wound.
Layman, Sparks, Sharp, and Quiroz were all charged with felony murder. Pursuant to Indiana Code section SI-30-1-4, Indiana’s Automatic Waiver Statute, felony murder charges were filed against Layman, Sparks, and Quiroz in the Elk-hart Circuit Court, where they would all be tried as adults. Quiroz pleaded guilty, and the trial court sentenced him to fifty-five years imprisonment with ten years suspended to probation. Layman, Sparks, and Sharp were all tried together and convicted of felony murder. The trial court sentenced Layman to fifty-five years imprisonment and Sparks to fifty years *961 imprisonment. Layman and Sparks appeal their convictions and sentences.
Discussion and Decision
I. Constitutionality of Convictions and Sentences
Layman and Sparks raise several constitutional challenges to their convictions and sentences. Specifically, they argue that Indiana Code section 31-30-1^, which requires adult-court jurisdiction over their offenses, is unconstitutional on its face and as applied, violates their right to equal protection under the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause of the Indiana Constitution, and violates the Due Process Clause of the Federal Constitution and the Due Course of Law Clause in the Indiana Constitution. Layman and Sparks also argue that a mandatory minimum sentence of forty-five years for juveniles convicted of felony murder violates the Eighth Amendment prohibition against cruel and unusual punishment, and a penalty range of forty-five to sixty-five years for reckless behavior resulting in death violates the Proportionality Clause of the Indiana Constitution.
However, a challenge to the constitutionality of criminal statutes must generally be raised by a motion to dismiss before trial, and the failure to do so forfeits the issue on appeal. Adams v. State, 804 N.E.2d 1169, 1172 (Ind.Ct.App.2004). The policy reasons for this rule, which include the preservation of judicial resources, the opportunity for a full development of the record, the utilization of trial court fact-finding expertise, and the assurance of a claim being tested by the adversary process, apply with particular force where the claim is a constitutional one. Endres v. Indiana State Police, 809 N.E.2d 320, 322 (Ind.2004) (declining to address claim of state constitutional right to religious freedom where the record and arguments were not sufficiently developed for this Court to decide important issue of Indiana constitutional law).
Here, Layman and Sparks both failed to file a motion to dismiss, and they did not object to the constitutionality of the statutes at trial. As a result, Layman and Sparks may not challenge the constitutionality of these statutes for the first time on appeal, and these constitutional issues are forfeited. See Plank v. Community Hospitals of Indiana, Inc., 981 N.E.2d 49, 55 (Ind.2013) (holding that Plank forfeited the opportunity for a hearing to develop his constitutional challenges where he did not preserve his claim).
II. Felony Murder
Layman and Sparks also argue that Indiana Code Section 35-42-1-1, the felony murder statute, was not properly applied in this case. The gravamen of this argument is that Johnson’s death was not reasonably foreseeable to Layman and Sparks, which is a challenge to the sufficiency of the evidence.
When we review the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of the witnesses. Glenn v. State, 999 N.E.2d 859, 861 (Ind.Ct.App.2013). We consider only the probative evidence and the reasonable inferences supporting the verdict. Id. The evidence is sufficient if it permits a reasonably drawn inference that supports the verdict. Id. The conviction will be affirmed unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. Id.
Indiana Code section 35-42-1-1(2) provides that a “person who ... kills another human being while committing or attempting to commit ... burglary ... commits murder, a felony.” The State need not prove intent to kill, only the *962 intent to commit the underlying felony. Exum v. State, 812 N.E.2d 204, 207 (Ind.Ct.App.2004), trans. denied. In Palmer v. State, 704 N.E.2d 124, 126 (Ind.1999), our supreme court held that the statutory language “kills another human being while committing” does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when the felon contributes to the death of any person. The Palmer court used this interpretation of the felony murder statute to affirm Palmer’s conviction for the death of his co-perpetrator who was shot and killed by a law enforcement officer. Id. Specifically, our supreme court explained as follows:
Our Court of Appeals has correctly observed: “[A] person who commits or attempts to commit one of the offenses designated in the felony-murder statute is criminally responsible for a homicide which results from the act of one who was not a participant in the original criminal activity. Where the accused reasonably should have ... foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation which would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation of such a dangerous situation is an intermediary, secondary, or medium in effecting or bringing about the death of the victim. There, the situation is a mediate contribution to the victim’s killing.
Id. (citing Sheckles v. State, 684 N.E.2d 201, 205 (Ind.Ct.App.1997)). See also Jenkins v. State, 726 N.E.2d 268 (Ind.2000) (affirming Jenkins’ felony murder conviction where co-perpetrator was shot and killed by robbery victim).
Here, Layman, Sparks and three co-perpetrators participated in a home invasion to commit a burglary. Four of the perpetrators broke down Scott’s back door while Sparks watched for the police or visitors to Scott’s house. The victim of an unlawful entry of or attack on his dwelling fighting back with deadly force is a natural consequence that has been justified by our State’s legislature. See I.C. § 35-41-3-2. In addition, our State Constitution gives the people a right to bear arms for the defense of themselves. Indiana Constitution Article I, § 32. For these reasons, it was reasonably foreseeable that the victim’s acts of self-defense or defense of his dwelling were likely to create a situation leading to the death of one of the co-perpetrators. See Exum, 812 N.E.2d at 208.
To the extent that Layman and Sparks ask us to overturn Palmer and Jenkins, we decline the invitation. It is not this Court’s role to reconsider or declare invalid decisions of our Supreme Court. Horn v. Hendrickson, 824 N.E.2d 690, 694 (Ind.Ct.App.2005). Indiana Supreme Court precedent is binding upon us until it is either changed by that court or by legislative enactment. Dragon v. State, 774 N.E.2d 103, 107 (Ind.Ct.App.2002), trans. granted then grant of trans. denied.
III. Sentences
Layman and Sparks also argue that their sentences are inappropriate. A defendant convicted of felony murder faces a sentencing range of forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind.Code § 35-50-2-3. The trial court sentenced Layman to fifty-five years, and Sparks to fifty years.
The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: “The Court may revise a *963 sentence authorized by statute if, after due consideration of the trial court’s decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.” Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court’s decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d 1219, 1222-225 (Ind.2008); Serino v. State, 798 N.E.2d 852, 856-57 (Ind.2003). The principal role of such review is to attempt to leaven the outliers. Cardwell, 895 N.E.2d at 1225.
Although senseless, the murder in this case is not particularly heinous. See Brown v. State, 10 N.E.3d 1, 5 (Ind.2014). There is no evidence that the victim was tortured or beaten or lingered in pain. See id. Further, the evidence reveals that this is the first offense for which Layman and Sharp were charged as adults. Both young men have previously been under informal supervision in juvenile court. Although this does not reflect favorably upon their character, their offenses were not particularly serious and were not related to the murder in this case. See id. at 6.
In addition, although the record reflects that the youhg men have a history of marijuana usage, where adolescents are the victims of addiction, this fact does not necessarily indicate bad character. See id. Rather, a juvenile offender’s difficult upbringing, which can include early drug and alcohol use, can serve to diminish the juvenile’s culpability and weigh in favor of a lesser sentence. Id. (citing Graham v. Florida, 560 U.S. 48, 92, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)). Further, Layman was only sixteen and Sparks was only seventeen at the time of the crime. “Sentencing considerations for youthful offenders — particularly for juveniles — are not coextensive with those for adults.” Id. (quoting Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012)). It is therefore necessary to consider an offender’s youth and its attendant characteristics both at initial sentencing and on appellate review. Brown, 10 N.E.3d at 6-7.
Lastly, we note that after Quiroz pled guilty, the trial court sentenced him to the fifty-five-year advisory sentence and suspended ten years to probation. However, the trial court sentenced Layman to fifty-five years and Sparks to fifty years. We can discern no difference in the relative culpability of the three defendants and their respective roles in this crime. The only difference we discern is that Quiroz pled guilty and Layman and Sparks exercised their constitutional right to a jury trial. It is constitutionally impermissible for a trial court to impose a more severe sentence because the defendant chose to stand trial rather than plead guilty. Walker v. State, 454 N.E.2d 425 (Ind.Ct.App.1983).
Based on the foregoing, we conclude that Layman’s and Sparks’ sentences are inappropriate. Like Quiroz, ten years of Layman’s sentence should be suspended to probation and five years of Sparks’ sentence should be suspended to probation.
IV. Sufficiency of the Evidence
Lastly, Sparks argues that there is insufficient evidence to support his felony murder conviction because he did not enter the house. However, Sparks, whose cursory argument is less than a page long, cites no cases in support of his claim. Sparks has therefore waived this issue on appeal. See Indiana Appellate Rule 46(A)(8)(a) (stating that each argument must be supported by citations to authorities, statutes, and the appendix or parts of the record on appeal relied on); Smith v. *964 State, 822 N.E.2d 193, 202-03 (Ind.Ct.App.2005) (holding that an issue is waived when a party fails to provide adequate citation to authority), trans. denied.
Waiver notwithstanding, we find sufficient evidence to support Sparks’ conviction. As previously stated, when reviewing sufficiency of the evidence claims, we consider only the evidence most favorable to the verdict and all reasonable inferences that can be drawn therefrom. Exum, 812 N.E.2d at 207. If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. Id.
Here, Sparks claims that “[n]o evidence at trial could lead to the conclusion that [Sparks] had anything at all to do with the burglary which constitutes the underlying charge for this felony murder conviction. [Sparks] did not enter the house.” Sparks’ Br. p. 19. However, our review of the evidence reveals that Sparks participated in the crime by knocking on the doors of the targeted victims. Sparks also functioned as a “lookout” who remained outside Scott’s house with a cell phone so that he could warn the young men if the police or another visitor arrived at Scott’s house. A “lookout” is an accomplice to the crime and subject to being tried as a principal. Terry v. State, 545 N.E.2d 831, 831 (Ind.1989). See also Exum, 812 N.E.2d at 208 (holding that defendant who was not the leader of the robbery, was not carrying a firearm, and may not have been in the apartment when his accomplice died, was criminally liable for the actions of his co-perpetrators). There is sufficient evidence to support Sparks’ felony murder conviction.
Conclusion
Layman and Sparks forfeited appellate review of their constitutional claims because they failed to raise them at trial. The felony murder statute was properly applied in this case, and there is sufficient evidence to support Sparks’ conviction. However, we remand this cause to the trial court with instructions to issue an amended sentencing order consistent with this opinion.
Affirmed and remanded.
MAY, J., concurs in result with separate opinion.
KIRSCH, J., dissents with separate opinion.

. Ind.Code § 35-42-1-1.